UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

ENTERPRISE FLEET MANAGEMENT, INC., )
                                            Plaintiff, )
v.                                                  )

RICHARD L. SCHEHR,                )   Case No.

Serve At:

2221 Templeton Drive
Arlington, Texas 76006

                                          Defendant.

## VERIFIED COMPLAINT

Comes now Plaintiff Enterprise Fleet Management, Inc. ("Enterprise") and for its Verified Complaint ("Complaint") against Defendant Richard L. Schehr ("Schehr") states as follows:

## INTRODUCTION

1. This action arises out of Schehr's misappropriation of Enterprise's confidential, competitively-valuable and trade secret information. Schehr is a former employee of Enterprise, who voluntarily resigned from his employment with Enterprise on January 2, 2014. Enterprise recently discovered that within minutes of submitting his resignation, Schehr improperly e-mailed highly confidential, competitively-valuable and trade secret information pertaining to Enterprise's business to a personal email address.

2. Schehr's misconduct violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), his duties under his Employment Contract, the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450 *et. seq.* ("MUTSA"), the Missouri computer tampering statutes, Mo. Rev. Stat. §§ 537.525 and 569.095 *et. seq.* ("MCTS"), and his common law duty of loyalty

to Enterprise. Schehr had no legitimate need for the highly confidential, competitively-valuable and trade secret information he sent to a personal email account on the same day he resigned from Enterprise. Nor did he have any legitimate reason to access, download and/or copy Enterprise's confidential, proprietary, trade secret information. He improperly took this information, on information and belief, so he could use it to unfairly compete with Enterprise.

3. In order to protect its confidential, competitively-valuable and trade secret information and put an end to the irreparable harm that Enterprise has suffered and/or will continue to suffer as a result of Schehr's unlawful conduct, Enterprise seeks injunctive relief enjoining Schehr from using, disclosing, and/or otherwise misappropriating its confidential, competitively-valuable and trade secret information, and seeks an award of compensatory damages, punitive damages, and attorneys' fees and costs.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Enterprise is a Missouri corporation with its headquarters and principal place of business in St. Louis County, Missouri.

5. Defendant Schehr, on information and belief, is a citizen of the State of Texas, who resides at 2221 Templeton Drive, Arlington, Texas.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Schehr because Schehr's tortious activities of improperly accessing, downloading and/or taking of Enterprise's confidential, competitively-valuable and trade secret information occurred in significant part in this judicial district. Much of the confidential and trade secret information Schehr improperly accessed, downloaded, copied and/or took was accessed, downloaded, copied and/or taken from

Enterprise's servers and databases located in St. Louis, and the impact from Schehr's misconduct is being and will be felt directly in St. Louis, where Enterprise is headquartered.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the conduct giving rise to the claims herein occurred in this judicial district and substantial injury to Enterprise occurred in this judicial district.

## GENERAL ALLEGATIONS

### Schehr's Employment with Enterprise

9. Enterprise, by and through its affiliates, offers car rental and car sharing services, commercial truck rental, corporate fleet management, and retail car sales. It is headquartered in St. Louis County, Missouri.

10. Schehr began his career with Enterprise in or around August 2006 as an Account Executive. In the years that followed, he was promoted two times, and in or around January 2011, was promoted to Area Sales Manager – a position he held until he voluntarily resigned from his employment with Enterprise.

11. As Area Sales Manager, Schehr was intimately involved in and had direct and significant responsibility for the generation and development of Enterprise fleet sales. He was also involved in the management and accountability of a team of Account Executives and Account Managers.

12. Schehr's duties allowed him to have access to highly-confidential and competitively-valuable information, including Enterprise's automotive leasing and rental policies, automotive and light truck fleet management policies, marketing plans, customer lists, records, accounts, and data processing information.

4256711

13. This information is both highly-confidential and competitively-valuable, and Enterprise takes reasonable measures to protect it from unauthorized use or disclosure. For example, Enterprise stores its confidential information on secure computer systems; limits the number of individuals who have access to the computer systems where the information is stored; requires unique user IDs and passwords; and limits the rights of certain users to view or edit data. In addition, Enterprise's corporate headquarters and branch locations are secured by locked doors, and confidential information is stored in secured offices that are not generally accessible. Moreover, certain highly-confidential and competitively sensitive files are stored in locked boxes.

14. Enterprise also has express company policies that restrict the accessibility, use and disclosure of its confidential information. For instance, Enterprise's Personnel Policies Summary provides, in pertinent part, as follows:

> Highly confidential and confidential information, including but not limited to methods of operation, customer lists, customers' personal information, employees' personal information, referral sources and trade secrets must be protected with appropriate safeguards. Current and former employees may not use customer lists to contact or solicit customers for any reason. Furthermore, the retention and use of proprietary information by a terminated employee may be detrimental and injurious to the company. Therefore, upon termination, all employees must promptly return such information.
>
> Computer-related access codes and passwords are confidential and should not be shared with others. Employees must take appropriate precautions to secure their computers and portable and mobile devices when not in use by either locking the computer terminals or logging off. The company prohibits unauthorized access to its technology systems and facilities; unauthorized use of cameras, camera phones, image, sound, and video recorders and any other monitoring devices; or computer hacking of any kind.
> . . . .
>
> Information that is classified highly confidential, confidential or internal must not be transferred externally to others without appropriate management approvals or secure transmission and without having previously executed appropriate contractual obligations for non-disclosure and security. . . . The

4256711

company requires appropriate management approval prior to an employee using a PDA or wireless handheld device configured to operate in conjunction with the company's equipment. Only PDAs that support company security policy will be allowed to connect. Employees must protect all devices and their contents from damage or loss. Do not save confidential or highly confidential data to desktop hard drives, laptop hard drives, portable drives, PDAs or wireless handheld devices. In the event that such devices are lost or stolen, the employee should immediately report the incident to his or her group sales manager, group privacy director and corporate security director. . . .

(*See* relevant pages of Business Ethics & Personnel Policies Summary, attached hereto as Exhibit A.)

15.     As an employee of Enterprise, Schehr was expected to abide by the terms of Enterprise's Personnel Policies Summary. In fact, on several occasions, Schehr signed an acknowledgement that he had read, understood, and would abide by these policies.

16.     As Area Sales Manager, Schehr entered into an Employment Contract with Enterprise whereby he agreed that upon termination of employment he would not retain copies of Enterprise's property, including without limitation, "files, lists, records and computer disks of [Enterprise] and any other data used by [Schehr]" to render services as Area Sales Manager. (*See* Employment Contract, attached hereto as Exhibit B.)

17.     Schehr acknowledged that a breach of the Employment Contract would constitute continuing and irreparable harm to Enterprise and entitle Enterprise to specific performance and injunctive relief.

### Schehr's Resignation and Improper Emailing, Accessing, Downloading and/or Copying of Enterprise's Confidential, Competitively-Valuable and Trade Secret Information

18.     On Thursday, January 2, 2014, at approximately 2:00 a.m., Schehr submitted his notice of resignation from Enterprise.

19.     The same day, at approximately 2:00 a.m., Schehr, came into Enterprise's office to email his customer list from his Enterprise computer to a personal email account. In

reviewing Schehr's email account, it became clear that Schehr took much more than his customer list during his visit to the office. He also emailed highly-confidential, competitively-valuable and trade secret information about Enterprise's business to a personal email account.

20. In addition to the customer list, the information Schehr emailed himself included documents relating to Enterprise's internal sales meetings and customer service protocol and procedures. This information is highly-confidential and would be very valuable to a competitor.

21. The same day, on Thursday, January 2, 2014, Enterprise accepted Schehr's resignation, effective immediately, and terminated his access rights to Enterprise's computer network and e-mail system. Shortly thereafter, Enterprise began a review of Schehr's email account.

22. Schehr had no legitimate reason to email this confidential, competitively-valuable, trade secret information to a personal email account. On information and belief, he sent this to information to himself – on the same day of his resignation – for the sole purpose of using it to help him unfairly compete with Enterprise.

23. Upon reviewing Schehr's Enterprise email account and discovering that he improperly sent confidential, competitively-valuable information to a personal email account, Enterprise began an examination of Schehr's Enterprise computer. This examination is not yet complete; however, information obtained to date suggests that, in the days leading up to his resignation, Schehr also improperly accessed, downloaded and/or copied large numbers of files stored on Enterprise's servers and/or computer databases.

24. As set forth in Enterprise's Personnel Policies Summary and the Employment Contract, upon termination of his employment, Schehr was required to return all of Enterprise's property, including records, files, computer disks and other materials, or copies thereof,

containing any confidential information. Schehr did not, however, return any of the documents he emailed to himself on the day of his resignation, or any other Enterprise confidential information, when left the Company.

## COUNT I

### Violation of the CFAA, 18 U.S.C. § 1030

25. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-24 above.

26. Schehr's conduct described above violates the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Schehr's conduct, at a minimum, violates 18 U.S.C. § 1030(a)(2)(C).

27. Schehr's company computer, as well Enterprise's servers, databases and/or other electronic computing and/or storage systems, are "computers" and "protected computers" under 18 U.S.C. § 1030(e)(1) and (2).

28. Schehr was not authorized to access his Enterprise computer in order to e-mail Enterprises' confidential, proprietary, competitively-valuable and/or trade secret information to help him and/or a competitor with Enterprise. Schehr also was not authorized to access Enterprise's servers, databases and/or other electronic computing and/or storage systems, in order to access, review, download, copy and/or transfer any such information for such purposes.

29. Schehr acted without authorization and/or in excess of his authorization in his accessing his Enterprise computer in order to e-mail Enterprises' confidential, proprietary, competitively-valuable and/or trade secret information to himself to help him and/or a competitor with Enterprise. Schehr also acted without authorization and/or in excess of his authorization by accessing Enterprise's servers, databases and/or other electronic computing and/or storage

4256711

systems, in order to review, download, copy and/or transfer any such information for such purposes.

30. Schehr's conduct described above has caused Enterprise damage and loss. Enterprise's damage and loss include, but are not limited to, (a) expenses, fees and costs incurred to uncover and determine the extent of Schehr's computer-related misconduct; and (b) damages and/or losses in an amount not yet determined resulting from the impairment of the integrity of the data and/or information pertaining to Schehr's computer-related misconduct. Such damages and/or losses are in excess of $5,000.

31. Enterprise is entitled, among other things, to recover compensatory damages and injunctive relief under 18 U.S.C. § 1030(g) as the result of Schehr's violations of the CFAA.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Schehr on Count I of the Complaint, and that:

(a) Schehr be temporarily, preliminarily and permanently enjoined from retaining, using or disclosing the information that he obtained in violation of the CFAA;

(b) Schehr be ordered to return all data and/or supporting documentation that he obtained in violation of the CFAA;

(c) Enterprise be awarded compensatory damages recoverable under the CFAA;

(d) Enterprise be awarded its costs, expenses and reasonable attorneys' fees;

(e) Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT II

### Breach of Contract

32. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-31 above.

33. Schehr and Enterprise were parties to a valid Employment Contract.

34. Schehr breached his duties under the Employment Contract by, among other things:

> (a) improperly accessing, downloading and/or taking Enterprise's confidential, competitively-valuable and trade secret information;
>
> (b) retaining copies of Enterprise's property, including without limitation, files, customer lists, records, and other data used as Area Sales Manager;
>
> (c) failing to return Enterprise's property upon termination, including without limitation, files, customer lists, records, and other data used as Area Sales Manager.

35. Schehr's breach of his Employment Contract has damaged or contributed to cause damage to Enterprise.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Schehr on Count II of the Complaint, and that:

> (a) Schehr be temporarily, preliminarily and permanently enjoined from retaining, using or disclosing the information that he obtained in violation of his Employment Contract;
>
> (b) Schehr be ordered to return all data and/or supporting documentation that he obtained in violation of his Employment Contract;

9

4256711

(c) Enterprise be awarded the full amount it is owed in compensatory damages, plus interest;

(d) Enterprise be awarded its costs, expenses and reasonable attorneys' fees; and

(e) Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT III

### Misappropriation of Trade Secrets Under the MUTSA

36. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-35 above.

37. Schehr's conduct described above constitutes a misappropriation of trade secrets under the MUTSA.

38. The information of Enterprise that Schehr improperly e-mailed to a personal e-mail address and/or downloaded, copied and/or took in the days leading up to his resignation included information that derives economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use. Such information is the subject of efforts by Enterprise that are reasonable under the circumstances to maintain its secrecy.

39. Schehr used improper means to improperly acquire and take Enterprise's trade secret information. In short, Schehr e-mailed to a personal e-mail address, and/or downloaded, copied and took such information, on information and belief, to help him and a competitor. Schehr's surreptitious conduct breached his duty to maintain the secrecy of Enterprise's trade secret information, violated Section 569.095 of the Missouri Revised Statutes, violates the

4256711

Computer Fraud and Abuse Act, and, more generally, constitutes espionage through electronic or other means as set forth in Mo. Rev. Stat. § 417.453(1).

40. Schehr's misappropriation of Enterprise's trade secret information has damaged and harmed, and is continuing to damage and harm, Enterprise. Enterprise cannot be fully or adequately compensated through monetary damages for the irreparable harm and damage caused by Schehr's misappropriation of its trade secret information.

41. Schehr's misappropriation of Enterprise's trade secret information is likely to continue unless he is temporarily, preliminarily and permanently enjoined from keeping such information.

42. Schehr's misappropriation of Enterprise's trade secret information is outrageous because of Schehr's evil motive and/or reckless disregard of Enterprise's rights.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Schehr on Count III of the Complaint, and that:

    (a)    Schehr be temporarily, preliminarily and permanently enjoined from keeping, using or disclosing Enterprise's trade secret information;

    (b)    Schehr be temporarily, preliminarily and permanently enjoined from working for a competitor as Area Sales Manager;

    (c)    Schehr be ordered to return all of Enterprise's trade secret information in his possession or under his custody or control, regardless of the medium in which such information may be stored or preserved;

    (d)    Enterprise be awarded compensatory and other damages recoverable under Mo. Rev. Stat. § 417.457, based upon the evidence to be presented at trial;

    (e)    Enterprise be awarded punitive damages in accordance with the MUTSA;

(f) Enterprise be awarded its costs and expenses; and

(g) Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT IV

### Missouri Computer Tampering Statutes

43. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-42 above.

44. Section 537.525 of the Missouri Revised Statutes provides as follows:

> 1. In addition to any other civil remedy available, the owner or lessee of the computer system, computer network, computer program, computer service or data may bring a civil action against any person who violates sections 569.095 to 569.099, RSMo, for compensatory damages, including any expenditures reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, computer service, or data was not altered, damaged or deleted by the access.
>
> 2. In any action brought pursuant to this section, the court may award reasonable attorney's fees to a prevailing plaintiff.

45. Enterprise is both an owner and lessee under Section 537.525.

46. Schehr's conduct violates Section 569.095 of the Missouri Revised Statutes. Schehr knowingly and without authorization or without reasonable grounds to believe that he had such authorization, at a minimum:

(a) took Enterprise's data and/or supporting documentation, residing or existing internal or external to Enterprise's computer, computer system and/or computer network, and/or

(b) retained data he knew or believes he obtained without authorization and/or without reasonable grounds to believe he had such authorization.

47. Enterprise has been damaged, and is continuing to be damaged, by Schehr's conduct in violation of Section 569.095.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Schehr on Count IV of the Complaint, and that:

    (a)  Schehr be temporarily, preliminarily and permanently enjoined from retaining, using or disclosing data and/or supporting documentation that he obtained in violation of Section 569.095;

    (b)  Schehr be ordered to return all data and/or supporting documentation that he obtained in violation of Section 569.095;

    (c)  Enterprise be awarded compensatory damages recoverable under Section 537.525 of the Missouri Revised Statutes;

    (d)  Enterprise be awarded its costs, expenses and reasonable attorneys' fees;

    (e)  Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT V

### Breach of the Duty of Loyalty

48. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-47 above.

49. While he was employed by Enterprise, Schehr was an agent of Enterprise and owed Enterprise a duty of loyalty.

50. Schehr breached his duty of loyalty to Enterprise by improperly emailing to a personal email account, and/or accessing, viewing, copying and/or downloading Enterprise's confidential and/or competitively-valuable information (to the extent such information was not

4256711

trade secret under the MUTSA) for the purposes of helping him and a competitor unfairly compete against Enterprise.

51.     In addition, compiling and collecting this information for the benefit of a competitor – whether it was to save time, money, or effort for the competitor – was competition (i.e. unfair competition) in and of itself. Schehr, in essence, was working to benefit a competitor while he was still employed by Enterprise, and his competitive misconduct for a competitor's benefit while he was still employed by Enterprise breached the duty of loyalty he owed to Enterprise.

52.     Schehr's breaches of the duty of loyalty have damaged and harmed, and are continuing to damage and harm, Enterprise.

53.     Schehr acted maliciously, recklessly and with reckless indifference of Enterprise's rights in breaching his duty of loyalty.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Schehr on Count V of the Complaint, in and that Enterprise be awarded compensatory damages based upon the evidence to be presented at trial, punitive damages, costs, and such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

BRYAN CAVE LLP

By: */s/ Daniel M. O'Keefe*
    Daniel M. O'Keefe, Mo. Bar #31521
    Brittany D. Kozal, Mo. Bar #61828
    211 North Broadway, Suite 3600
    St. Louis, MO  63102-2750
    Tele:  (314) 259-2000
    Fax:  (314) 259-2020
    dmokeefe@bryancave.com
    brittany.kozal@bryancave.com

*Attorneys for Plaintiff Enterprise Fleet Management, Inc.*

## DECLARATION

I, Edward J. Harmon, being of lawful age, hereby declare under penalty of perjury, as follows:

1. I am Corporate Human Resource Manager of Enterprise Fleet Management, Inc.

2. The facts alleged in the Verified Complaint are based upon matters known personally to me and/or on information provided by others, and are true and correct to the best of my knowledge, information and belief.

*Edward J. Harmon* (signature)

4256711